(28 Misc. Rep. 255.)

### HATFIELD v. SISSON.

(Supreme Court, Trial Term, New York County. July 3, 1899.)

1. SLANDER—WORDS ACTIONABLE PER SE.

An allegation that "the plaintiff was criminally liable for his handling of the business and books of the American Athlete," with no extrinsic circumstances alleged giving significance to the words spoken, does not set forth words actionable per se.

2. COURTS—JURISDICTION—TORTS COMMITTED IN FOREIGN STATE.
   The courts will not take jurisdiction of an action for slander spoken in another state, of which both plaintiffs and defendant were residents when the alleged wrong was committed.

Action by Junior Hatfield, plaintiff, against Elias H. Sisson, defendant, for damages for an alleged slander of the plaintiff. An objection by defendant to the jurisdiction of the court was sustained.

E. A. Sumner, for plaintiff.
Seward Davis, for defendant.

McADAM, J. New York has slander suits of its own residents sufficient to occupy the time of its courts without inviting or encouraging litigation of that class of right belonging to other states. The proofs show that the plaintiff and defendant were at the time the slander was uttered, and ever since have been, residents of New Jersey, where the alleged wrong was committed; and it is now the settled rule that the courts of this state will not retain jurisdiction to redress foreign tortious injuries, unless special reasons are shown to exist, which make it necessary or proper to do so, and none has been made to appear here. Burdick v. Freeman, 46 Hun, 138, affirmed in 120 N. Y. 421, 24 N. E. 949; De Witt v. Buchanan, 54 Barb. 31; Whart. Confl. Laws, § 707; Ferguson v. Neilson (Sup.) 11 N. Y. Supp. 524; Smith v. Crocker, 14 App. Div. 249, 43 N. Y. Supp. 427; Robinson v. Navigation Co., 112 N. Y. 315, 19 N. E. 625. The court, in Ferguson v. Neilson, supra, said:

"The reason of the rule is obvious, because the courts of this state should not be vexed with litigations between nonresidents over causes of action arising outside their territorial limits. Our courts are not supported for any such purpose."

The rule is enforced in actions between nonresidents for torts committed in other states, and this notwithstanding the constitutional provision which declares that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states" (Const. U. S. art. 4, § 2), for this provision is satisfied by recognizing the rights of nonresidents to sue for domestic torts or upon contract obligations, upon the conditions prescribed by the lawmaking power of the state in which the remedy is sought. "Every rule of comity and of natural justice and of convenience is satisfied by giving redress in our courts to nonresident litigants when the cause of action arose or the subject-matter of the litigation is within this state." Robinson v. Navigation Co., supra.

This court, therefore, in the exercise of its discretion, declines jurisdiction of so much of the present action as relates to slander uttered in New Jersey, and this is the gravamen of the complaint. The real grievance is that the plaintiff agreed to marry the defendant's daughter, and when the defendant discovered the fact he asserted his paternal authority, and said to his daughter so many uncomplimentary things about the plaintiff that she declined to receive any further visits from the plaintiff, and refused to marry him. All this occurred in New Jersey, where the parties resided, and still reside, and where the wrong, if any, should be redressed. Incidentally, and in that

form only, the plaintiff charges the use of certain objectionable words in New York; but these, standing alone, are not actionable (see Havemeyer v. Fuller, 60 How. Prac. 316), because they do not charge the plaintiff with any felonious act, or any wrong in connection with which special damage is pleaded. They simply assert that in the opinion of the defendant "the plaintiff was criminally liable for his handling of the business and books of the American Athlete." As the complaint sets forth no extrinsic circumstances which give significance to the words alleged to have been spoken by defendant, the question is whether the words themselves, taken in their natural sense, are slanderous per se. Thomas v. Blasdale, 147 Mass. 438, 18 N. E. 214. "Handling business and books" is not a criminal act, and saying the plaintiff was criminally liable therefor is matter of opinion only, for the complaint contains nothing from which any such criminal inference can be drawn. The rule of pleading on that subject is thus stated in Ogders, Lib. & Sland. at page 99:

"Where the words, prima facie, are not actionable, an innuendo is essential to the action. It is necessary to bring out the latent injurious meaning of the defendant's words, and such innuendo must distinctly aver that the words had a distinct actionable meaning."

So, in Hemmens v. Nelson, 138 N. Y. 517, 34 N. E. 342, it was held that:

"Where the complaint in an action for slander charges the use of words by defendant which may or may not be harmless, according to the intent and the sense in which they were used, an innuendo or allegation is necessary, to the effect that they were used in a sense to render them actionable."

"When the words are not actionable per se, and do not on their face convey a slanderous imputation, there must be a prefatory statement of some extrinsic matter, a colloquium connecting it with the words spoken, and an innuendo showing the injurious sense in which they were uttered" (5 Wait, Act. & Def. 744); and then the sense in which the words were used and understood by those present may go to the jury (Nealon v. Frisbie, 11 Misc. Rep. 12, 31 N. Y. Supp. 856). The court realizes that the words referred to are merely charged incidentally, for there is no allegation that they were ever communicated to the defendant's daughter, or had any influence whatever with her.

The gravamen of the complaint, as before stated, is what occurred in New Jersey, where the parties reside, and there the contest may be fought to a finish. This court will, under the circumstances, and to the end that the incident follow the principal, permit the plaintiff within 10 days to file a stipulation withdrawing from the complaint the incidental or New York charge, without prejudice to any remedy the plaintiff may elect to invoke; for, on proper allegations, or taken, perhaps, in connection with the allegations as to the New Jersey slander, the words uttered in New York may be actionable. The plaintiff, being a resident of New Jersey, may as of right include in his action there slanderous words uttered anywhere,—a thing he cannot do here, because of the residence of both parties in that state. The courts of New Jersey are competent to deal with the whole question, and do full justice to the litigants. If the plaintiff declines

so to stipulate, it will be implied that he insists upon an adjudication by this court as to such incidental or New York charges as an independent cause of action complete in itself. Baylies, Code Pl. 35. And in that event the complaint in respect thereto will be dismissed, with costs, upon the ground that on the allegations applicable thereto the words charged are not actionable. The rule is that "each count in a complaint containing more than one cause of action must contain, in and of itself, a full and complete statement of all the facts constituting the cause of action sought to be stated." 4 Am. & Eng. Enc. Pl. & Prac. 620; Baylies, Code Pl. p. 35. The law will not assume anything which is not averred, for the law will not infer that a party's pleadings are less strong than the facts will warrant. Cruger v. Railroad Co., 12 N. Y. 190. An order may be entered in accordance herewith, which must be settled on two days' notice.